**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FREEDOM OF THE PRESS
FOUNDATION,
49 Flatbush Avenue #1017
Brooklyn, NY 11217

      *Plaintiff*,

v.

OFFICE OF MANAGEMENT AND
BUDGET
1725 17th Street, N.W.
Washington, DC 20503


      *Defendant.*

CIVIL ACTION NO. 26-cv-00969

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. Plaintiff Freedom of the Press Foundation ("Plaintiff" or "FPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Office of Management and Budget ("OMB") to disclose documents requested pursuant to FOIA. Specifically, Plaintiff is seeking documents related to President Trump's March 20, 2025 Executive Order, titled "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos."[1]

---

[1] Exec. Order No. 14,243, Stopping Waste, Fraud, and Abuse by Eliminating Information Silos, 90 Fed. Reg. 13,681 (Mar. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/stopping-waste-fraud-and-abuse-by-eliminating-information-silos/.

2. To date, Defendant has failed to make a determination on Plaintiff's FOIA request, to disclose any of the requested documents within the time stipulated under FOIA, or to provide any date when such documents will be disclosed.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7. Plaintiff, Freedom of the Press Foundation, is a national non-profit section 501(c)(3) organization dedicated to press freedom, government accountability, and the public's right to know. FPF regularly submits FOIA requests to gather information to educate the public about matters key to its mission, including government corruption and secrecy. The organization is incorporated under the laws of California. FPF also regularly publishes a newsletter which details updates and news related to its mission, including stories related to FOIA documents FPF obtains.

8. Among other public interest projects, FPF in 2023 announced the creation of the Daniel Ellsberg chair on government secrecy, a new position focusing on highlighting and fighting the many ways the government keeps secrets – from the press, the public, and congressional

overseers. In furtherance of this program, Lauren Harper, FPF's first Daniel Ellsberg Chair on Government Secrecy, submitted the FOIA requests at issue in this matter and has generated original reporting on the subject matter.

9.  Defendant OMB is an agency of the United States under 5 U.S.C. § 552(f)(1). OMB is located at 17th Street, N.W., Washington, DC 20503, and has possession and control over the records Plaintiff has requested.

10. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA. Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

## STATEMENT OF FACTS

11. On March 20, 2025, President Trump issued Executive Order 14243, "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos."[2]

12. This executive order is intended to vastly expand data sharing across federal agencies. It directs agency heads to "ensure Federal officials designated by the President or Agency Heads (or their designees) have full and prompt access to all unclassified agency records, data, software systems, and information technology systems . . . . This includes authorizing and facilitating both the intra- and inter-agency sharing and consolidation of unclassified agency records."[3]

13. The executive order also seeks to dismantle privacy protections that are a bulwark against government data exploitation. It orders agency heads to, "rescind or modify all agency

---

[2] 90 Fed. Reg. 13,681 (Mar. 25, 2025).

[3] Id. § 3(a).

guidance that serves as a barrier to the inter- or intra-agency sharing of unclassified information . . . ."[4]

14. Additionally, the executive order sets out to give federal agencies unprecedented access to state databases, even those held by third party contractors. It orders agency heads to "take all necessary steps, to the maximum extent consistent with law, to ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases."[5]

15. In order to help fulfill the Trump Administration's data-related goals, the executive order commands agency heads to submit several pieces of documentation to OMB.

16. It orders agency heads to "review agency regulations governing unclassified data access, including system of records notices, and, within 30 days of the date of this order, submit a report to the Office of Management and Budget cataloging those regulations and recommending whether any should be eliminated or modified to achieve the goals set forth in this order."[6]

17. It also directs agency heads to "conduct a review of classified information policies to determine whether they result in the classification of materials beyond what is necessary to protect critical national security interests and, within 45 days of the date of this order, submit a report to the Office of Management and Budget cataloguing those classified information policies and recommending whether any should be eliminated or modified to achieve the goals set forth in this order."[7]

---

[4] Id. § 3(b).
[5] Id. § 3(c).
[6] Id. § 3(b).
[7] Id. § 3(f).

18. Experts strongly objected to this executive order, stating that it "allows for erosion of individual privacy, a cornerstone of our freedom,"[8] "attempts to eliminate crucial privacy protections and pave the way for a centralized database,"[9] and that it " invites irreversible harm by leaving sensitive data vulnerable to abuse."[10]

19. The Trump Administration's mishandling of personally identifiable information is well-documented. Several lawsuits have been filed challenging the Administration's attempts to access troves of sensitive data.[11]

20. In the District of Maryland, Federal Judge Ellen Lipton Hollander shut down the Trump Department of Government Efficiency's ("DOGE") access to the Social Security Administration's ("SSA") extensive, highly sensitive databases. Judge Lipton Hollander concluded that the agency's claims about searching for waste, fraud, and abuse didn't justify its unfettered access to sensitive personal data. She held that "[t]he DOGE Team is essentially engaged in a fishing expedition at SSA, in search of a fraud epidemic, based on little more than suspicion."[12] She further explained that the government "never identified or articulated even a single reason" to access such information as "Social Security numbers, medical records, mental health records, hospitalization records, drivers' license numbers, bank and credit card information, tax information, income history, work history, birth and

---

[8] Tedrick M. Housh, *Federal "Information Silos" Protect Privacy – A New Executive Order Threatens Them*, Lathrop GPM (Apr. 1, 2025), https://www.lathropgpm.com/insights/federal-information-silos-protect-privacy-a-new-executive-order-threatens-them/

[9] *Fighting Federal Data Abuses*, Electronic Privacy Information Center (EPIC), https://epic.org/issues/democracy-free-speech/fighting-federal-data-abuses/

[10] Janice Luong, *Pitfalls of Trump's Info Silo Executive Order Compromise Privacy*, Project on Government Oversight (Oct. 2, 2025), https://www.pogo.org/analyses/pitfalls-of-trumps-info-silo-executive-order-compromise-privacy

[11] See e.g. *New York v. U.S. Dep't of the Treasury,* No. 1:25-cv-01144, Temporary Restraining Order (S.D.N.Y. Feb. 21, 2025), https://ag.ny.gov/sites/default/files/court-filings/ny-v-usdt-tro-order.pdf

[12] *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. ELH-25-0596, Memorandum Opinion 135 (D. Md. Mar. 20, 2025), https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.49.0.pdf

marriage certificates, and home and work addresses." This and more information is purportedly subject to Executive Order 14,243.

21. The elimination of privacy guardrails in Executive Order 14243 would create profound privacy problems for millions of Americans whose data is stored in government databases. Existing privacy laws, regulations, and policies set strict standards about who can access what data, why, and what they can do with that data. Eliminating those guardrails would potentially allow unfettered, untracked access by anyone within the government.

22. These risks were perfectly illustrated in a recent media report about a DOGE employee who left his DOGE job with a thumb drive of two highly sensitive Social Security Databases — the Numident and Master Death File — containing records about more than 500 million living and dead Americans. He then tried to take that highly sensitive data to his next employer, a government contracting company.[13]

23. The Privacy Act, 5 U.S.C. § 552a, and related regulations also create transparency and accountability around data access. Privacy Act System of Records Notices, for example, allow the public to understand what personally identifiable information is being collected about them, how it is being protected, who can access it, and where it is being stored.[14] The Privacy Act also allows individuals to request corrections of inaccurate information.[15]

24. Experts have noted that elimination of "information silos" could also allow for the creation of increasingly detailed dossiers of Americans, which could then be used for any purpose the Trump Administration proposes.[16]

---

[13] Lisa Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, Washington Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge-2/.
[14] § 552a(e)(4).

[15] § 552a(d)(2).

[16] *See* Steven Levy, *President Trump's War on "Information Silos" Is Bad News for Your Personal Data,* WIRED (Apr. 4, 2025, 10:00 AM), https://www.wired.com/story/plaintext-trump-executive-order-information-silos-privacy/.

25. The compartmentalization prescribed in the Privacy Act and other federal privacy regulations and policies also helps to protect information security. Combining vast troves of sensitive personally identifiable information into single databases would create a much bigger, more inviting target for hackers, thieves, and hostile foreign actors.[17]

26. Because it is concerned about these serious privacy concerns, FPF submitted two FOIA requests to OMB.

Plaintiff's FOIA Requests

27. On May 19, 2025, FPF submitted its first request ("First Request") to OMB via email. Specifically, FPF requested *"Copies of all reports submitted by agency heads in response to the March 20, 2025, executive order entitled, 'Stopping Waste, Fraud, and Abuse by Eliminating Information Silos.' This order required agencies to submit to OMB by May 1 reports cataloguing the classified information policies that result in the classification of materials beyond what is necessary to protect critical national security interests and recommendations on whether any should be eliminated or modified to achieve the goals set forth in the order."*

28. In its First Request, FPF asked for news media fee status, as well as expedited processing.

29. On May 19, 2025, via email, the agency acknowledged receipt of the First Request and assigned it tracking number 2025-1456.

30. On November 25, 2025 FPF followed up with the agency via email to request an estimated date of completion for the First Request.

31. To date, OMB has not provided documents in response to FPF's First Request and has not replied to FPF's request for an estimated date of completion of that First Request.

---

[17] Id.

32. To date, OMB has not adjudicated FPF's request for news media fee status or FPF's request for expedited processing related to the First Request.

33. On October 28, 2025, FPF submitted a second, related request ("Second Request") via OMB's online FOIA portal. FPF requested "*Copies of all reports submitted by agency heads in response to the March 20, 2025, executive order entitled, 'Stopping Waste, Fraud, and Abuse by Eliminating Information Silos' cataloguing regulations governing unclassified data access, including system of records notices, and recommending whether any should be eliminated or modified to achieve the goals set forth in the order.*"

34. FPF requested news media fee status for its Second Request.

35. On November 21, 2025, OMB acknowledged FPF's Second Request and assigned it tracking number 2026-057.

36. To date, OMB has not provided documents, or even an estimated date of completion, in response to FPF's Second Request. Nor has the agency adjudicated FPF's request for news media fee status.

37. The information requested by FPF would directly inform the public about the serious privacy concerns implicated by Executive Order 14243.

38. The privacy concerns implicated by Executive Order 14243 have heightened in the period since FPF filed its FOIA requests.

39. On December 16, 2025, Rep. Erin Houchin introduced H.R. 6749: Eliminating Information Silos Act of 2025, to codify Executive Order 14,243.

40. Watchdog organizations have continually reported on the mishandling of sensitive data across multiple federal agencies.[18]

---

[18] *See* Xaver Clarke, *Personal Information at Risk*, REVOLVING DOOR PROJECT BLOG (updated Mar. 3, 2026), https://therevolvingdoorproject.org/personal-information-at-risk/.

41. On February 25, 2026, it was reported that the Central Intelligence Agency and other intelligence agencies would be provided with "more information from investigations by the FBI, Drug Enforcement Administration and other agencies to combat drug gangs and other transnational criminal groups that the administration has classified as terrorists."[19] The Office of the Director of National Intelligence "declined to answer specific questions about the expanded information sharing or the legal basis for it."

42. On March 3, 2026, seventy-two members of the U.S. House of Representatives and Senate sent a letter to the Office of the Inspector General ("OIG") for the Department of Homeland Security ("DHS") Joseph Cuffari investigate whether Immigration and Customs Enforcement ("ICE") "is purchasing illegally obtained location data about Americans, how that data has been used, whether audits of employee access to uncover abuse are occurring and the policies governing data usage."[20] The DHS OIG office recommended in 2023 that ICE discontinue use of commercial telemetry data until privacy impact assessments under the Privacy Act were completed.[21]

## COUNT ONE:

### *Violation of Statutory Deadline*

---

[19] Tim Golden, *Trump Administration Moves to Allow Intelligence Agencies Easier Access to Law Enforcement Files*, PROPUBLICA (Feb. 25, 2026), https://www.propublica.org/article/trump-cia-law-enforcement-records-privacy-intelligence-community.

[20] Lindsey Wilkinson, *Alleged ICE, DHS location data purchases under scrutiny by Democrats*, FEDSCOOP (Mar. 3, 2026), https://fedscoop.com/dhs-ice-data-sharing-gathering-warrantless-purchase/ (letter available at: https://www.wyden.senate.gov/imo/media/doc/wyden_letter_to_dhs_oig_on_ice_purchasing_location_datapdf.pdf).

[21] DHS OIG, *CBP, ICE, and Secret Service Did Not Adhere to Privacy Policies or Develop Sufficient Policies Before Procuring and Using Commercial Telemetry Data (REDACTED)*, OIG-23-61, at 4, 14-15 (Sept. 28, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-09/OIG-23-61-Sep23-Redacted.pdf.

43. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

44. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information.   FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure."  Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

45. The FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i).

46. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

47. More than nine months have passed since Plaintiff submitted its First Request to OMB, yet the agency has provided no documents in response to that First Request.

48. More than four months have passed since Plaintiff submitted its Second Request to OMB, yet the agency has not provided documents in response to the Second Request, either.

49. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its First and Second Requests, FPF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT TWO

### *Unlawful Withholding of Agency Records*

50. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

51. Defendant OMB has failed to search for records responsive to Plaintiff's FOIA Request.

52. Defendant's failure to make a determination on or disclose the documents requested in First and Second Requests within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

53. Defendant's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the Trump Administration's efforts to eliminate essential privacy guardrails.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

   i.   Enter an order declaring that Defendant wrongfully withheld requested agency documents;

  ii.   Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

 iii.   Maintain jurisdiction over this action until Defendant is in compliance with the FOIA, the Administrative Procedure Act, and every order of this Court;

  iv.   Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

   v.   Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on _____

s/ *Ginger P. McCall*_____
Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Kevin H. Bell

DC Bar # 90015600
kevin@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642
*Attorneys for Plaintiff*